**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **DANIEL FLORES, ON BEHALF OF** | § | |
| **HIMSELF AND ON BEHALF OF ALL** | § | |
| **OTHERS SIMILARLY SITUATED,** | § | |
| **Plaintiff,** | § | |
| **V.** | § | **A-21-CV-1185-LY** |
| | § | |
| **BJ'S RESTAURANTS, INC. and BJ'S** | § | |
| **RESTAURANT OPERATING** | § | |
| **COMPANY,** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE:

Before the court is Defendants' Motion to Compel Individual Arbitration, Dismiss Collective Allegations and Stay Action, and Incorporated Memorandum (Dkt. #21) and all related briefing.[1]  Having reviewed the pleadings, the relevant case law, as well as the entire case file, and determining that oral arguments are not necessary, the undersigned submits the following Report and Recommendation to the District Court.

## I.     BACKGROUND

Plaintiff Daniel Flores worked for Defendants at the BJ's Brewhouse in Cedar Park, Texas as a waiter from December 2019 to February 2021.  Dkt. #1 (Compl.) at ¶ 31. He was paid less than the federal minimum wage. *Id*. Flores asserts claims under the Fair Labor Standards Act ("FLSA") on behalf of himself and those similarly situated.[2]

---

[1] The motion was referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

[2] In their motion, Defendants identify Justin Lopez as an Opt-in Plaintiff and move with respect to Lopez as well.  *See* Dkt. #3 (Lopez's Opt-in notice). Flores does not respond specifically as to Lopez, but the motion briefing

As part of Flores's onboarding process, he completed an online Arbitration Agreement (the "Agreement") in which he agreed to arbitrate any claims and in which he waived the right to bring any class or collective action claims. Accordingly, Defendants seek to dismiss the collective actions claims, compel individual arbitration, and the stay the action based on the Agreement. Dkt. #21.  In response, Flores argues Defendants never signed the Agreement and thus it is not binding.

## II.     ARBITRATION AGREEMENTS

Enforcement of an arbitration agreement involves two analytical steps: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)). Here, the first step is at issue.

Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court. *Id.* (citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016)). The party moving to compel arbitration must show that the agreement meets all of the requisite contract elements. *Id.* In addition, because the validity of the agreement is a matter of contract, at this stage, the strong federal policy favoring arbitration does not apply. *Id.* at 688-89 (citing *Klein*, 710 F.3d at 236; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)).

Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Id.* at 689; *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012). As to the

indicates Lopez's Arbitration Agreement was identical to Flores's. Alexandra Davis also recently opted in to the suit. Dkt. #33.

last element, whether a signature is required to bind the parties is a question of the parties' intent. *Huckaba*, 892 F.3d at 689; *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 454 (5th Cir. 2013). Signatures are not required "[a]s long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract." *Huckaba*, 892 F.3d at 689.

A court can decide intent as a matter of law. *Id.*; *Tricon Energy*, 718 F.3d at 454. "In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." *Huckaba*, 892 F.3d at 689 (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)). "In identifying such intent, 'we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'" *Huckaba*, 892 F.3d at 689 (quoting *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 333). Courts "begin this analysis with the contract's express language." *Id.*

## III.   ANALYSIS

Flores contends that because Defendants did not sign the Agreement, no agreement to arbitrate was reached. Defendants contend the arbitrator should decide Flores's challenges because the Agreement delegated challenges to arbitrability to the arbitrator. Defendants' argument either presupposes the Arbitration Agreement's formation or would require a party who never entered into an arbitration agreement to arbitrate whether an arbitration agreement was actually reached. Defendants' position is contrary to the law. As discussed above, because Flores disputes whether an arbitration agreement was even formed, that issue is for the court to resolve. *See Huckaba*, 892 F.3d at 688.

Similarly, Defendants argue the FAA applies to the formation issue because the Agreement states it is governed by the FAA and that Texas law favors arbitration. These assertions also presuppose that a valid arbitration agreement exist and are incorrect when the issue is whether a valid arbitration agreement exists. *See id.* ("Texas has no presumption in favor of arbitration when determining whether a valid arbitration agreement exists.").

Accordingly, the court now turns to whether both sides were required to sign the Agreement. The Arbitration Agreement includes a line at the end for the team member to initial the Agreement, but contains no such line for the employer to sign. However, the Arbitration Agreement contains at least three clauses referencing both parties' signatures:

> **Team Member and BJ's understands and agreement that, by signing this Agreement, we are expressly waiving any and all rights to a trial by a judge and/or a jury regarding any disputes and claims which we now have or which we may in the future have that are subject to arbitration under this Agreement.**
>
> . . . .
>
> Team Member and BJ's understand and agree that this Agreement . . . may be modified only in a writing . . . signed by the Chief Executive Officer of BJ's and Team Member.
>
> . . . .
>
> TEAM MEMBER AND BJ'S UNDERSTAND AND AGREE THAT TEAM MEMBER AND BJ'S HAVE BEEN ADVISED TO CONSULT WITH AN ATTORNEY OF THEIR OWN CHOOSING BEFORE SIGNING THIS AGREEMENT, AND TEAM MEMBER AND BJ'S HAVE HAD AN OPPORTUNITY TO DO SO. TEAM MEMBER AND BJ'S AGREE…THAT BY SIGNING IT, EACH IS WAIVING ALL RIGHTS TO A TRIAL OR HEARING BEFORE A JUDGE OR A JURY OF ANY AND ALL DISPUTES AND CLAIMS SUBJECT TO ARBITRATION UNDER THIS AGREEMENT.

Dkt. #21-6 (Exh. D) (emphasis in original).  Thus, despite the lack of signature block for the employer, the Agreement specifically contemplates that Defendants will sign the Agreement.

Defendants cite a number of cases where courts enforced an arbitration agreement even though one side had not signed the agreement.  However, those cases are easily distinguishable.

4

In several of the cases, the courts held the employee was still bound to arbitrate even though the employee did not sign the agreement because the agreement clearly stated that continued employment would be construed as an agreement to arbitrate. *See Robertson v. Fiesta Rest. Group, Inc.*, 2018 WL 3130677, at *6 (S.D. Tex. Jun. 8, 2018), adopted, 2018 WL 3121877 (S.D. Tex., Jun. 26, 2018) (enforcing arbitration agreement that employee did not sign but did acknowledge that agreeing to arbitration was a condition of employment); *In re Dillard Dep't Stores*, 198 S.W.3d 778, 780–81 (Tex. 2006) (employee who received, but did not sign, summary of arbitration policy and continued working was required to arbitrate because summary warned employees that they were deemed to accept the arbitration provision if they continued their employment); *Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 170 (Tex. App.—El Paso 2015) (where arbitration agreement expressly required employee's signature, employee who did not sign arbitration agreement was still bound by it when she had been notified that continued employment constituted an agreement to be bound). The Arbitration Agreement here included no such language that arbitration was a mandatory condition of employment.

In other cases cited by Defendants, courts enforced arbitration agreements where the employers' signature block was unsigned, finding that the agreements did not specifically require the employers' signatures. *See Wright v. Hernandez*, 469 S.W.3d 744, 760-61 (Tex. App. 2015) (where agreement did not expressly require that itself or any modifications be signed, employer's lack of signature in the signature block was not fatal); *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 716–20 (Tex. App.—Houston [1st Dist.] 2020) (arbitration agreement enforced even though employer did not sign signature block where there was no evidence parties intended signature to be condition precedent); *see also Dish Network L.L.C. v. Brenner*, 2013 WL 3326640, at *3–5 (Tex. App.—Corpus Christi Jun. 27, 2013) (Dish not required to sign the

arbitration agreement in order to enforce it, but there was no discussion that agreement required Dish's signature).[3] In contrast, the Agreement here specifically required Defendants' signature.

Flores cites several cases that did not enforce an arbitration agreement because the employer did not sign the agreement. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018); *Daya v. Sky MRI & Diagnostics, LLC*, No. Civ. A. 4:20-cv-02965, 2021 WL 4431108 (S.D. Tex. Aug. 2, 2021); *Hi Tech Luxury Imps., LLC v. Morgan*, No. 03-19-00021-CV, 2019 WL 1908171 at *2 (Tex. App.—Austin Apr. 30, 2019); *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 210–11 (Tex. App.—El Paso 2004, orig. proceeding). Defendants correctly point out the agreements in those cases included a signature block for the employer, whereas the Agreement here did not. But those cases did not rest on the employer's empty signature block. Case law is consistent that an unsigned signature block is not dispositive.  Instead, courts look to the language of the agreement.  Where the agreement referenced that the employer would sign the agreement, stated the agreement could not be modified except in writing signed by both parties, and included mutual benefits and agreements by both the employee and the employer, courts held the employer's signature was required. *See Huckaba*, 892 F.3d at 688; *Daya*, 2021 WL 4431108; *Hi Tech Luxury Imps.*, 2019 WL 1908171 at *2; *In re Bunzl USA, Inc.*, 155 S.W.3d at 210–11. Although the Agreement here did not include a signature block for Defendants, it referenced Defendants' signature, described rights Defendants waived by signing, required any modifications to the Agreement to be in writing and signed by both sides, and stated that both Flores and Defendants agreed to binding arbitration and how and where it would be conducted. Based on that language, the Arbitration Agreement required Defendants' signature.

---

[3] Defendants also cite *Edwards v. Doordash, Inc.*, 888 F.3d 738, 745 (5th Cir. 2018), but that case applied California law and turned on a specific California statute.  It has no applicability here.

Defendants contend the court should also consider its conduct in determining whether the parties intended Defendants to sign the Agreement. Defendants contend the facts that it drafted the Agreement, required Flores to sign the Agreement, and kept the Agreement in Flores's electronic file, which Flores was able to access at any time, and routinely moves to compel arbitration when employees bring suit are evidence that it intended to be bound by the Agreement.[4] However, those actions do not trump the actual language of the Agreement. *See Huckaba*, 892 F.3d at 690-91 ("Ref–Chem also points to other factors to demonstrate its intent to be bound without signing, such as the fact that it created the arbitration agreement, kept the agreement as a business record, and moved to compel arbitration when Huckaba sued. Even if we were to consider this evidence, our conclusion would remain the same. Considering the record as a whole, this evidence does not satisfy Ref–Chem's burden that it intended to be bound without signing the agreement.").

Alternatively, Defendants argue that their "typed name, logo, [and] branding" and message confirming completion of onboarding paperwork sufficed as an electronic signature. An "electronic signature" is "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." TEX. BUS. & COM. CODE § 322.002(8). Defendants' logo and the words "Gold Standard Execution"[5] are located at the top of the arbitration agreement. While Defendants spend much effort arguing the undisputed point that electronic signatures are given equal weight as wet-ink signatures or that any "mark" can constitute a signature, they provide no factual or legal basis

---

[4] Notably, the two cases Defendants cite in which it moved to compel arbitration are not helpful to the court in this analysis. *Leslie Dicesare v. BJ's Restaurant Operations Company, Inc.*, Case No. 19-cv-00499-JFL (E.D. Pa. order of Sept. 19, 2019), included no analysis and the plaintiff only disputed Defendants' motion to the extent Defendants sought to dismiss, rather than stay, the case pending arbitration. In *Felicia Yerkey v. BJ's Restaurants, Inc.,* Case No. 14-cv-200 (N.D. Fl. Order of Jan. 23, 2015), the court sent all issues, including contract formation, to the arbitrator because the plaintiff did not specifically challenge the delegation clause.

[5] It is unclear what this phrase refers to or whose execution it refers to.

that their logo at the top of the first page of the Agreement was intended to serve as a signature. Notably, the same logo and words "Gold Standard Execution" also appear at the top of Flores's "Personal Information" page, which required Flores's signature but not Defendants'. Dkt. #21-3.

After new employees completed their electronic paperwork, they were presented with a screen that stated, "Congratulations! You are finished with the process." Dkt. #21-8. Defendants' logo was at the top of the screen, and on the right was a list of documents that the employee could print or view. Defendants contend their "name, logo, branding, and confirmation message are a 'symbol, or process . . . logically associated' with the Agreement and adopted by [Defendants'], and thus constitute an electronic signature." Dkt. #29 at 7 (citing TEX. BUS. & COM. CODE § 322.002(8)). But the confirmation message states "You [the employee] are finished with the process." It does not indicate Defendants have signed the Agreement. Moreover, the confirmation message displays at least sixteen documents, not all of which required Defendants' signature. It makes no sense to impute that Defendants "signed" any of the documents by confirming the *employee* completed the onboarding process.

As many of the cases Defendants cited demonstrate, an employer is not required to sign an arbitration agreement in an at-will employment relationship unless the agreement so requires. This Agreement did so require. Defendants' post hoc attempts to reconcile their employee onboarding process with the actual requirements of the Agreement they drafted do not pass muster. In this case, "the question of [Defendants'] intention is answered by the agreement it drafted." *See Huckaba*, 892 F.3d at 690.

Defendants ask the court to reach a conclusion that could have easily been obtained by careful drafting on *their* part. Instead, because the Agreement as written does not match how it is used in practice, Defendants ask the court to make several logical leaps—leaps the court is not

favored to make given the Agreement itself and the current state of the law. Accordingly, Defendants have not shown that an arbitration agreement governs the parties' dispute. The undersigned will recommend that Defendants' motion be denied.

## IV.    RECOMMENDATIONS

For the reasons given above, the undersigned **RECOMMENDS** the District Court **DENY** Defendants' Motion to Compel Individual Arbitration, Dismiss Collective Allegations and Stay Action, and Incorporated Memorandum (Dkt. #21).

## V.    OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED  October 17, 2022.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE